UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HARDNEY,<br><br>  Plaintiff,<br><br>  v.<br><br>G. PHILLIPS, et al.,<br><br>  Defendants. | No.  2:13-cv-2371 TLN CKD P<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983.  This action proceeds on the amended complaint filed March 18, 2014, which alleges that defendants Phillips, Fernandez, and Yang used excessive force in violation of the Eighth Amendment when they sprayed plaintiff with pepper spray on December 26, 2012. (ECF No. 16 ("Cmplt.").)  Before the court is defendants' motion for summary judgment (ECF No. 56), which has been briefed by the parties.  (ECF Nos. 60, 62, 70.)  For the reasons discussed below, the undersigned will recommend that defendants' motion be granted.

II. Summary Judgment Standards Under Rule 56

　　Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by

1

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Discussion

A. Facts

In the complaint, plaintiff alleges that defendants Phillips, Yang, and Fernandez used excessive force against him on December 26, 2012, when they pepper-sprayed him and his cellmate, Santana, through their cell's food port. (Cmplt.) Plaintiff alleges that he "did not impose a threat to any of the officers nor said a single word to them for them to spray him[.]" (Id., ¶ 15.) Afterward, plaintiff was placed in a holding cage in Administrative Segregation. (Id., ¶ 13.) Two hours later, he was returned to his "pepper spray-soaked" cell. (Id., ¶ 16.) No one had cleaned it or changed the bedding. (Id., ¶ 17.) "For about three weeks, plaintiff suffered from burning skin and eyes, choking, and coughing" until he was moved to another cell. (Id., ¶ 18.)

Defendants do not assert that plaintiff gave them any reason to pepper-spray him. Rather, they assert that they sprayed plaintiff's cellmate through the food port when the cellmate refused to obey orders. The following facts are undisputed except where otherwise noted:

At all relevant times, plaintiff was housed at California State Prison-Sacramento. (DUF 1.) Defendants Phillips, Fernandez and Yang were employed as correctional officers at CSP-Sac.

(DUF 2-4.)

On December 26, 2012, at approximately 4:50 p.m., Fernandez and Yang were returning plaintiff's cellmate, inmate Santana, from the Triage and Treatment Area to the cell he shared with plaintiff. (DUF 5.) Before the cell door was opened, plaintiff was placed in handcuffs inside the cell. The cell door was opened, and Santana was secured inside the cell. Once the cell door was closed, Yang removed the handcuffs from both inmates. (DUF 6.)

As soon as Santana's handcuffs were removed, Santana placed his right arm through the food port. (DUF 7.) Defendants assert that Santana asked to talk to a sergeant, while plaintiff recalls that Santana asked to talk to a doctor. (DUF 7; ECF No. 60, ¶ 5.) At his deposition, plaintiff testified that he was "directly behind" Santana, "trying to talk to the officers at the door . . . trying to prevent it from escalating." (Pl.'s Dep., 28:14-23.) Santana was kneeling with his arm through the food port. (Id., 28:24-29:7.)

The food port is a rectangular opening, approximately five inches tall by twelve inches wide, located horizontally on the cell door slightly below the middle of the door. The opening is able to be secured, or closed, with a flap-door. (DUF 8.) Santana had nearly his entire arm, up to the bicep area, extended out through the food port, preventing staff from closing it. (DUF 9.) Defendants aver that Santana's action posed a threat to institutional safety and security, because an unsecured food port exposes staff to the possibility that an inmate will throw objects and/or substances (such as weapons or bodily fluids) or grab staff through the opening. (DUF 10.)

Section 51020.11.2 of the California Department of Corrections and Rehabilitation Operations Manual ("DOM"), in effect on December 26, 2012, provides that:

> If during routine duties, correctional officers encounter an inmate who refuses to allow staff to close and lock the food port, the officer shall verbally order the inmate to relinquish control of the food port and allow staff to secure it. The officer shall issue a warning that chemical agents will be used if he/she does not comply. If the inmate refuses to relinquish control of the food port after the warning, the officer is authorized to administer chemical agents against the inmate to secure the food port.

////

////

(DUF 11.)[1]  Inmates are required to comply with lawful orders from staff.  (DUF 13.)  CDCR authorizes reasonable force necessary to gain compliance with a lawful order.  (DUF 24.)

Fernandez and a non-defendant officer ordered Santana to remove his arm from the food port or they would use pepper spray, but Santana did not comply with their orders.  (DUF 12.)  In deposition testimony, plaintiff acknowledged that Santana refused to comply with orders to remove his arm from the food port.  (Pl.'s Dep., 30:1-12.)  Defendants assert that Fernandez and Yang simultaneously sprayed Santana with MK-9 oleoresin capsicum pepper spray[2] from a distance of approximately four feet, striking Santana in the right shoulder, arm and facial area.  (DUF 16.)  Plaintiff asserts they sprayed from a distance of two feet away, striking both Santana and himself directly in the face, causing them both to choke and gag.  (ECF No. 60, ¶ 14.)

Despite the pepper spray, Santana continued to hold the food port.  (DUF 16.)  Plaintiff "started banging on the door and told them to let me out because [the spray] was burning in my face and eyes."  (Pl.'s Depo., 31:11-14.)

Next, defendants assert, defendant Phillips told Santana to remove his arm from the food port, but he did not comply.  (DUF 17.)  Defendants assert that Phillips moved closer to the food port and attempted to pepper spray Santana in the face.  Santana swung his arm and struck Phillips in the upper right thigh.  (DUF 18.)  Phillips backed away from the cell door and sprayed Santana, striking him in the upper right shoulder and face.  (DUF 19.)

During this time, plaintiff was "at the door, still trying to get out of the cell."  His eyes were burning and he was choking, but he was "trying to keep everything calm and . . . trying to tell my cellie to pull his arm in" because he wanted to avoid "a big fight."  He was also asking defendants to let him out of the cell.  (Pl.'s Depo., 35:1-25.)  Plaintiff did not recall Yang, Fernandez, or Phillips saying anything to him during the incident.  (Pl.'s Depo., 32:25-34:11, 35:19-25.)

---

[1] The court takes judicial notice of this section of the DOM.  (See ECF No. 56-4, Ex. G.)

[2] A person exposed to pepper spray will typically experience coughing, gagging, shortness of breath, and a burning sensation to the eyes and skin.  These symptoms typically resolve within one to two hours following exposure to fresh air or water.  (DUF 27.)

As to whether they aimed the spray at him, plaintiff testified that "the spraying started when I was talking to them through the food port" and they sprayed into the cell from a few feet away, but other than that, he couldn't see much. (Pl.'s Depo., 36:1-37:1.) Defendants assert that they did not aim the spray at plaintiff, and believed that, because Santana's body was blocking the food port opening, the spray would not reach plaintiff. (DUF 26.)

After the spraying, plaintiff and Santana were placed in restraints and removed from the cell. Fernandez and another officer escorted Santana to the Triage and Treatment Area, where he was decontaminated and placed in a holding cell. (DUF 20.) Plaintiff was escorted to a holding cell by non-defendant officers in the rotunda area of the building. (DUF 21.) He remained there for at least forty-five minutes. (DUF 21.)

While in the holding cell, plaintiff asked Fernandez and a non-defendant officer for a decontamination shower, which they refused. (DUF 22.) Plaintiff asserts that no one offered him a decontamination shower. (Pl.'s Depo., 21:14-23.) A December 26, 2012 medical report indicates that plaintiff was examined after his O.C. spray exposure, "refused" decontamination, and given self-decontamination instructions. (ECF No. 56-3 at 19.) Plaintiff denies that he refused decontamination. (Pl.'s Depo., 19:13-19.)

Plaintiff testified that no one cleaned his cell, nor replaced the mattress and linen, before he was returned to his cell later that day. (Pl.'s Depo., 20:12-24.) Plaintiff does not allege, nor is there any evidence, that defendants were responsible for cleaning his cell after the incident.

One month later, plaintiff submitted a medical request stating that he had a "pounding headache and shortness of breath ever since my cellmate was sprayed with pepper spray on December 26, 2012." (ECF No. 56-3 at 21.) Plaintiff testified that, as a result of his exposure to pepper spray, he suffered long-term effects: a decreased sense of smell, high blood pressure, headaches for two months after the incident, and itching in his groin area for two months after the incident. (Pl.'s Depo., 19:1-9.)

////

////

////

B. Legal Standards

1. Excessive Force

The Eighth Amendment prohibits cruel and unusual punishment. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitely v. Albers, 475 U.S. 312, 319 (1986). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)) (internal quotations omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted). In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (quotation marks and citations omitted). While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency. Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted). Thus, it is the use of force rather than the resulting injury which ultimately counts. Id. at 1178.

2. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

C. Analysis

Here, construing the evidence in the light most favorable to plaintiff, the undersigned finds no genuine dispute as to whether defendants used unconstitutionally excessive force. They were pepper-spraying plaintiff's cellmate for refusing to obey orders, and plaintiff was positioned behind his cellmate as they sprayed through the food port at close range. Defendants did not address plaintiff or threaten to spray him, and there is little or no evidence they aimed at him. Under the factors considered in an excessive force analysis, Hudson, 503 U.S. at 7, the record does not raise a genuine possibility that the use of force was malicious or sadistic.

Even if some dispute existed as to whether the use of force was excessive, the doctrine of qualified immunity would bar liability, as defendants did not violate a "clearly established" federal right. Plaintiff has no federal right to avoid exposure to pepper spray under the circumstances here: close proximity to an inmate who is defying orders. While the officers could have instructed plaintiff to stand back, their failure to do so does not rise to a federal constitutional violation.

Finally, plaintiff has not made out a constitutional claim against any defendant based on the fact that no one decontaminated his cell before he was placed back in it. There is no evidence that defendants were to blame for this apparent oversight, and the failure-to-clean allegations are beyond the scope of the excessive force claim at issue. Thus the undersigned will recommend that defendants' motion for summary judgment be granted.

D. Motion to Strike

Defendants have moved to strike those of plaintiff's exhibits that are reprints of news articles. (ECF No. 64; see ECF No. 60 at 53-59.) "[N]ewspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted." AFMS LLC v. United Parcel Service Co., 2015 WL 1967035, *6 (C.D.Cal. April 30, 2015) (collecting cases). As plaintiff offers these articles to prove their content, the exhibits constitute hearsay. Thus the undersigned does not consider them as evidence on summary judgment.

////

////

Accordingly, IT IS HEREBY ORDERED that defendants' motion to strike (ECF No. 64) is granted.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 56) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 13, 2015

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

/ hard2371.sj